S. SCHAPIRO & SONS *v.* UNITED STATES (No. 4375)[1]

United States Court of Customs and Patent Appeals, March 23, 1942

*Jordan & Klingaman (J. L. Klingaman* of counsel) for appellants.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel); for the United States.

[Oral argument February 4, 1942, by Mr. J. L. Klingaman and Mr. Rao]

[1] C. A. D. 196.

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Garrett, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, overruling the protest of appellants whereby recovery was sought of a portion of the duties assessed and collected by the Collector of Customs at the port of New York upon an importation of rags, invoiced as "Bleached White Wipers," which were classified under paragraph 922 of the Tariff Act of 1930, reading:

Par. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

The merchandise was entered November 9, 1933, and the protest bears date of June 19, 1934.

Specifically, the claim on behalf of appellants is that a portion of the rags was paper stock and that such portion was entitled to classification and free entry under paragraph 1750 of the act, which provides, among other things, for "paper stock, crude, of every description." It is conceded that, as imported, the rags claimed to be paper stock were intermingled in bundles with other rags which were not paper stock. Under these circumstances and for reasons hereinafter recited, the collector applied section 508 of the 1930 tariff act which reads:

SEC. 508. COMMINGLING OF GOODS.
Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

It is contended by appellants, in effect, that the customs officials could readily have ascertained the proportion of paper-stock rags and that it was incumbent upon the collector, rather than the importer, to segregate them for tariff purposes from the rags which were not paper stock.

No testimony was taken in the case, and no samples of the merchandise were filed in evidence. The controversy was submitted upon a stipulation signed by counsel for the respective parties from which we quote the following:

It is hereby stipulated and agreed between counsel as follows:
1. That the merchandise consists of old cotton rags packed in the following manner. Approximately fifty pounds of rags are laid flat on top of each other and the sides and ends turned in to make a rectangular bundle which bundle is

wrapped and tied. Ten such bundles are then packed and compressed into a bale and wrapped with burlap.

2. That the rags consist in part of wiping rags, and in part of rags used chiefly for paper making, the respective proportions not determined at the time of importation, and that the entire importation was assessed for duty at 3 cents per pound under paragraph 922, tariff act of 1930.

3. That these two classes of rags were intermingled and in order to ascertain the proportion of paper making rags, it is necessary to open the bales and bundles and to sort the rags by hand, but that no such sorting was necessary for appraisement purposes.

4. That no request for segregation under Sec. 508 was made by the plaintiff, and that the rags were not segregated under customs supervision.

5. That subsequently without government supervision the importer ascertained the amount of rags chiefly used for paper making and found same to be 4972 pounds and that for the purpose of this record the government accepts said finding of the importer as correct.

6. That under the act of 1922 and under the act of 1930 up to February 12, 1933, it was the practice of the plaintiff and other importers to segregate under customs supervision the packages designated by the collector of customs for examination; and of the collector to pass free of duty such proportions of the importations as were found to consist of rags chiefly used for paper making, and to classify the remainder for duty.

7. That the merchandise was imported during the time when the ruling of the Commissioner of Customs dated January 13, 1933, and published as T. D. 46106, Abstract 4 (63 Treas. Dec. 70), reading as follows, was in effect:

(4) *Cotton rags—Japanese wipers.*—Certain cotton rags of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under section 508 of the tariff act of 1930. Change of practice effective 30 days from the date of the publication of this abstract in the weekly TREASURY DECISIONS. Bureau of Customs circular letter No. 942 dated January 11, 1933. (110428)

and was of the kind covered by said ruling.

It appears that the foregoing department ruling embraced as paragraph 4 in T. D. 46106, was published in abstract form, being based upon the circular letter No. 942, therein alluded to, in which there was a modification of a prior circular letter No. 896. The text of circular letter No. 942 is set forth in the stipulation as follows:

*To Collectors of Customs and Others Concerned:*

Reference is made to Bureau of Customs Circular Letter No. 896, of August 10, 1932. Since the date of that letter, the Bureau has continued its investigation of the importation, examination, and classification of cotton rags, with special reference to the class of rags referred to as "Japanese wipers."

The Bureau is now satisfied that "Japanese wipers" consist in their entirety of specially selected, specially processed, and specially packed cotton rags which, in the condition in which they are imported into the United States, differ distinctly from any class of rags chiefly used in this country for papermaking.

While it is true that by sorting any importation of "Japanese wipers," the importer may obtain a quantity of rags which, if separately imported, would be unsalable for anything but paper stock, it is found that no such rags have been separately imported, and that the quantities of the imported "Japanese wipers" which find their way into paper making are negligible. The Bureau is accordingly of the opinion that all "Japanese wipers" are properly classifiable as cotton rags not chiefly used for paper making, dutiable at the rate of 3 cents per pound under paragraph 922 of the Tariff Act of 1930.

Certain indications have reached the Bureau that some importers of "Japanese wipers" have arranged, or will arrange, with their foreign shippers for a different packing of the goods under consideration than has heretofore been customary in the trade. If an importer requests permission to segregate any importation of cotton rags under the provisions of section 508 of the Tariff Act, he should be granted the privilege in accordance with the procedure set forth in Circular Letter No. 896, but no segregated rags shall be classified otherwise than under paragraph 922 unless the segregation is completed at the importer's expense within ten days from the date of entry, as provided in section 508 of the Tariff Act and Circular Letter No. 896, and the examiner is satisfied that the segregated portion of the merchandise consists of rags of a kind not ordinarily found in shipments of "Japanese wipers" and, further, of a kind which is chiefly used in the United States for paper making.

In the designation of examination packages from importations of "Japanese wipers," the collector shall designate one bale of each mark or grade in addition to the usual 10%, the extra bales to be delivered to the appraiser's stores under cord and seal, to be held by the appraiser for use as samples for presentation to the Customs Court in the event a protest is filed against the decision of the collector with respect to their classification. When the collector is satisfied that no protest will be filed, the sample bales may be released to the importer. The liquidation of entries covering importations of cotton rags of which full bales are being held as samples should be expedited by collectors and comptrollers in order to eliminate any undue delay in the release of such bales if no protest is filed.

Circular Letter No. 896 is modified to the extent herein indicated, and the last paragraph thereof, requiring monthly reports of the results of segregations of importations of cotton rags, is revoked. In all other respects the instructions therein contained shall continue in full force and effect.

As it appears that the instructions contained in this letter will result in the assessment of greater duties than it has been the established practice to assess when importations of "Japanese wipers" were segregated under section 508 of the Tariff Act, the change of practice shall be made effective only with respect to importations entered or withdrawn for consumption after the expiration of thirty days from the date an abstract of this letter is published in the weekly TREASURY DECISIONS.

(Signed)                                                    F. X. A. EBLE,
                                                        *Commissioner of Customs.*

In the cases (cross-appeals) of *United States* v. *S. Schapiro & Sons* and *S. Schapiro & Sons et al.* v. *United States,* 24 C. C. P. A. (Customs) 343, T. D. 48771, decided by us January 4, 1937 (about two and one-half years subsequent to the filing of the protest here involved), we affirmed the holding of the trial court that the regulation embodied in T. D. 46106 was "without warrant of law and of no binding force insofar as it in effect attempts to classify merchandise before importation regardless of the actual facts with reference thereto." In so doing, we said:

The said regulation does not purport to be based upon incapability of segregation, but attempts to determine, in advance of importation, that segregation is not necessary.

\*          \*          \*          \*          \*          \*          \*

It would not seem to require any argument to establish that the rights of an importer under the law may not be abridged by a decision of the Bureau of Customs in the form of a general regulation.

It is stated in the decision of the trial court in the instant case:

The rags may be said to be of the mixed wiping and paper-stock variety which were before this court in the case of *Schapiro & Sons* v. *United States*, T. D. 48305, affirmed by our appellate court in *United States* v. *Schapiro & Sons*, 24 C. C. P. A. 343, T. D. 48771 * * *.

While we do not question the accuracy of the foregoing statement, it must be said that there is no evidence in the record before us to sustain it. Samples were introduced in evidence and there was elaborate testimony respecting the rags involved in the cross-appeals which came before us. In the instant case, no testimony was taken nor were any samples placed in evidence. The record in those cases was not made a part of the record here, nor does the stipulation refer to it.

That matter, however, is not particularly material here, because the issue here was not present there. There the importers themselves had caused different classes of rags to be segregated in conformity with section 508, *supra*. Here they failed to do that—failed even to make a request for such action, so far as the record shows. Had they done with respect to the rags here involved what they did with respect to the rags there involved, this controversy probably never would have reached us. We there held, in effect, that rags which were paper stock (proper proof of their character as such being made) could be segregated from non-paper-stock rags for tariff purposes and admitted duty free. A question upon which we did not pass, because it was not involved, was *whose was the duty, under section 508, supra, to make the segregation*. That is the question here, and in fairness to counsel for appellants, we deem it not improper to say that they have so recognized it, and have not contended before us that our decision in the *Schapiro & Sons* (cross-appeals) cases, *supra*, is here controlling.

Counsel for appellants do point to the fact that the trial court in its decision in the *Schapiro & Sons* case, T. D. 48305, after referring to certain testimony, said:

The foregoing testimony is certainly proof that the so-called Japanese wipers are readily capable of segregation, and that the Collectors of Customs had been in the habit of making such before the publication of said Treasury Department prohibition to the contrary, as well as in the case of later importations.

They then state that in the instant case "It [the trial court] flatly repudiated" the foregoing and quoted the following from its decision in the instant case:

It is now realized that the use of the language "readily capable of segregation" on our part was too broad and unnecessary, and should more properly have read "capable of segregation," as evidenced from the fact that up to that time segregation had always been made by the importers of mixed wiping and paper stock rags under customs supervision, by request. A reading of the decision of the appellate court affirming our said decision, supra, will show that they understood the matter of the segregation of the cotton rags in this way. *United States* v. *Schapiro & Sons*, 24 C. C. P. A. 343, supra.

It is proper to state that the trial court immediately before the last foregoing quotation, said:

The question of a compliance by the importers with said section 508, regarding segregation or request for segregation, was not in issue in that case, but only whether said Treasury Department ruling, T. D. 46106, Abstract 4, supra, was conclusive on the question of fact as to the dutiable character of the merchandise.

So far as our own decision in the cross-appeals is concerned, we think nothing is said therein to indicate that it was our view that the quantity of paper-stock rags and the quantity of non-paper-stock rags, respectively, could have been "readily ascertained by the customs officers," or even by appellants themselves, by any cursory inspection of the packages or bundles, and our decision there should not be so construed.

Confining ourselves to the facts of the instant case, it appears from the record that approximately 25,000 pounds of rags were imported. They were packed in 50 bales, each bale contained 10 bundles of 50 pounds weight. It was ascertained by an examination made by the importer, *not under Government supervision*, that 4,972 pounds of rags were of the character chiefly used for paper making. The rags which weighed 4,972 pounds were intermingled in the bundles with the 20,028 pounds of rags which were not paper stock, and, according to the stipulation, it was necessary, in order to ascertain the proportion—which must mean the quantity—of paper-stock rags, to open the bales and the individual bundles in the bales and to sort the rags by hand.

To state the situation in different terms: It was necessary in this case, in order accurately to determine quantities, to open 500 bundles, sort the rags, separate the different classes by hand and weigh them. Only by this procedure could there have been a determination of the respective classes based upon size, absorbent qualities, condition, freedom from heavy patches, holes, etc.—factors which required consideration in determining what were paper-stock rags. That this procedure might have been followed by the customs officials may be conceded but we are unable to agree that it was the intent of Congress in enacting section 508, *supra*, to require that they do it. The primary interest in separating the paper-stock rags from the non-paper-stock rags was that of the importers, and the section defines the conditions under which such separation could have been made by them. We are of opinion that under any fair interpretation of the section the burden rested upon the importers rather than upon the collector.

In our decision in the case of *United States* v. *E. E. Holler* (Suit No. 4252), 28 C. C. P. A. (Customs) 124, C. A. D. 133, we had occasion to interpret section 508, *supra*, and recite its legislative history. In the course of our decision we reviewed a number of court decisions relating to commingled goods, some of which arose before and some

after the enactment of the section. While the merchandise there involved—fresh fish—was different in character from that here involved and the circumstances attending the importations were also different, the principle, or rule, stated in that decision is deemed applicable here.

It is urged on behalf of appellants that while T. D. 46106, Abstract 4, was in effect, there was no obligation on the importer either to make segregation under section 508, *supra*, or to offer to segregate.

That contention is based, as we understand it, upon the fact that even if segregation had been made the collector, acting under the instructions from the Commissioner of Customs, would have assessed all the merchandise at 3 cents per pound.

Several authorities were cited in support of the proposition stated in appellants' brief that "There are many situations in law in which the performance of a duty, either contractual or statutory, is dispensed with, and, where performance is dispensed with, it is, of course, unnecessary to offer to perform."

A review of those authorities is not deemed necessary because we do not think that, granting the correctness of the rule, it is applicable here. Whatever the situation with respect to the departmental ruling (and as heretofore recited it was held invalid) the statute—section 508, *supra*—was valid and in effect. Furthermore, as will be seen from the text of circular letter 942, *supra*, importers of rags were not precluded from segregating them while in customs custody. On the contrary, it was stated that they should be granted that privilege. Had appellants requested that procedure in this case and met with a denial, a different question of law would confront us. If the request had been made and granted and the segregation made, apparently the situation would be analogous to that which existed in the *Schapiro & Sons* (cross-appeals) cases, *supra*.

Upon the record before us, we are of opinion that the trial court reached the correct conclusion and the judgment appealed from is *affirmed*.